# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

CHRISTIAN PARLER, et al., individually
and on behalf of all other persons similarly
situated,

Case No. 05-CV-2198 (PJS/JJG)

Plaintiffs,

ORDER

v.

KFC Corporation,

Defendant.

---

Donald H. Nichols, Michele R. Fisher, Paul J. Lukas, Rachhana T. Srey, and
Sarah M. Fleegel, NICHOLS KASTER & ANDERSON, PLLP, for plaintiffs.

Robert P. Davis and Robert C. Varnell, MAYER BROWN ROWE & MAW; and
Robert R. Reinhart and Gabrielle D. Mead, DORSEY & WHITNEY LLP, for
defendant.

This matter is before the Court on plaintiffs' objection to Magistrate Judge Jeanne J.

Graham's January 22, 2007 Report and Recommendation ("R&R"). Judge Graham recommends

(1) granting plaintiffs' motion for decertification; (2) dismissing the opt-in plaintiffs without

prejudice; (3) prohibiting the late opt-in plaintiffs from joining this action; and (4) staying any

order adopting the R&R for sixty days. The Court has conducted a de novo review. *See* 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Plaintiffs do not object to any of these recommendations except the third. With respect to

that recommendation, the Court agrees with plaintiffs that, because defendant has indicated that

it does not oppose the joinder of plaintiffs who filed their consent forms as of December 1, 2006,

the Court should permit those plaintiffs to join this action before being dismissed in order to

preserve their rights. The Court does not adopt the R&R insofar as it recommends to the

contrary.

As noted, plaintiffs do not object to any of Judge Graham's remaining recommendations. But plaintiffs do object to Judge Graham's statement that, "[b]ecause their job duties differ on a restaurant-by-restaurant basis, the plaintiffs concede that they are not similarly situated." R&R at 2. Plaintiffs argue that their concession was narrower than Judge Graham's characterization and ask the Court to "correct" the R&R in order to prevent defendant from using this statement against plaintiffs in subsequent litigation.

Judge Graham was not, in this sentence, making any factual finding. Rather, she was characterizing statements made by plaintiffs in their papers. Those statements speak for themselves. Other courts need not rely on Judge Graham to tell them what plaintiffs did or did not concede in this litigation; those courts can look directly at the plaintiffs' representations and make their own decisions.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.  Plaintiffs' motion for decertification and to add plaintiffs [Docket No. 135] is GRANTED in part and DENIED in part.

2.  The motion is GRANTED as follows:

    a.  All plaintiffs who filed a notice of consent with the Court as of December 1, 2006 are permitted to join this action.

    b.  The claims of existing opt-in plaintiffs, including those newly joined under paragraph 2(a) of this Order, are DISMISSED WITHOUT PREJUDICE.

-2-

3.    Paragraph 2(b) of this Order is STAYED for sixty days.

4.    Plaintiffs' motion is DENIED in all other respects.


Dated: June 4, 2007                      s/Patrick J. Schiltz
                                         Patrick J. Schiltz
                                         United States District Judge

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

**Christian Parler,**
**individually and on behalf of others**
**similarly situated,**

Plaintiffs,

v.

**KFC Corporation,**

Defendant.

**Civil No. 05-2198 (PJS-JJG)**

**REPORT**
**AND**
**RECOMMENDATION**

This matter comes before the undersigned on December 21, 2006 on the plaintiffs' motion to decertify and to add new plaintiffs (Doc. No. 135). Paul J. Lukas, Esq., Donald H. Nichols, Esq., and Michele R. Fisher, Esq., appeared on behalf of the plaintiffs. Robert P. Davis, Esq., and Robert R. Reinhart, Esq. appeared on behalf of defendant KFC Corporation.

## I.   BACKGROUND

The plaintiffs, Christian Parler and others employed as assistant general managers by defendant KFC Corporation, bring action under the Fair Labor Standards Act (FLSA) and similar state wage laws. They allege that they were improperly exempted from overtime pay requirements. There are currently about one thousand plaintiffs, from twenty-nine states, participating in this litigation.

The plaintiffs principally bring a collective action under § 16(a) of the FLSA, which provides in relevant part,

> An action to recover [under the FLSA] may be maintained against any
> employer . . . by any one or more employees for and in behalf of himself
> and other employees similarly situated. No employee shall be party

> plaintiff to any such action unless he gives his consent in writing to become
> such a party and such consent is filed in the court in which such action is
> brought.

28 U.S.C. § 216(b). The statute provides that similarly situated plaintiffs, who consent in writing to join

the action, may participate in the collective action. Where a collective action is pleaded, a two-phase

procedure is used to determine whether the opt-in plaintiffs are similarly situated.

The first phase is conditional certification. At this phase, the court considers whether there is a

colorable basis to show the existence of a group of similarly situated plaintiffs. This inquiry is not

particularly intensive, and on an appropriate showing, conditional certification is granted and notice is given

to prospective opt-in plaintiffs. The second phase is decertification, which ordinarily occurs by a motion

from the defendant at the conclusion of discovery. The court reexamines whether the plaintiffs are similarly

situated, this time with greater scrutiny. Should the litigation survive decertification, the collective action

proceeds to trial. *See, e.g., Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir.

1998);[1] *Smith v. Heartland Automotive Servs., Inc.*, 404 F.Supp.2d 1144, 1149 (D.Minn. 2005).

In this litigation, collective certification was previously granted, and the *plaintiffs*, rather than the

defendants, now move for decertification. Because their job duties differ on a restaurant-by-restaurant

basis, the plaintiffs concede that they are not similarly situated. This conclusion is not contested by KFC.

The issue on this motion, instead, is the appropriate remedy. The plaintiffs argue that they should be

organized into separate groups, state by state, and have venue transferred to the appropriate federal district

---

[1]     Although *Thiessen* involves collective actions under the Age Discrimination in Employment Act,
that act expressly incorporates the collective action procedure of the FLSA, and so it is equally controlling
here. *See, e.g., Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995).

court. KFC counters that the appropriate remedy is to dismiss the opt-in plaintiffs without prejudice.

## II.    ANALYSIS

Federal authorities consistently state that, where decertification is granted in an action under the

FLSA, the opt-in plaintiffs are dismissed without prejudice and the named plaintiffs proceed to trial. *See,*

*e.g., Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1214-15 (11th Cir. 2001) (quoting *Mooney*

*v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)); *Scholtisek v. Eldre Corp.*, 229 F.R.D.

381, 387 (W.D.N.Y. 2005) (same); *Smith*, 404 F.Supp. 2d at 1149 (same).

Although the current motion occurs after conditional certification, some additional guidance may

be provided by cases at this procedural stage. Where plaintiffs show some common policy or conduct

between employees in a particular state or geographic area, some authorities have granted conditional

certification for that area. *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006);

*Bernard v. Household Int'l, Inc.*, 231 F.Supp. 433, 434 (E.D.Va. 2003); *Bayles v. American Medical*

*Response of Colorado, Inc.*, 962 F.Supp. 1346, 1347-48 (D.Colo. 1997). But where plaintiffs fail to

show such a common policy, even conditional certification is denied. *See Saxton v. Title Max of*

*Alabama, Inc.*, 431 F.Supp.2d 1185, 1188 (N.D.Ala. 2006); *Miekle v. Laidlaw Transit, Inc.*, 313

F.Supp.2d 759, 764 (N.D.Ill. 2004).

In the papers supporting their motion, the plaintiffs did not offer evidence supporting their

reorganization into state-by-state groups. But at the motion hearing, they alluded to evidence about the

existence of common state policies. Given the state of the record, this Court declines the parties' invitation

to make findings on whether plaintiffs in certain areas are similarly situated. The plaintiffs have not

adequately shown a common policy, unique to employees in any particular state, that would justify their

reorganization into state-by-state groups. And it is probable, moreover, that such groups would not even qualify for conditional certification. *Cf. Saxton*, 431 F.Supp. at 1188; *Mielke*, 313 F.Supp.2d at 764.

To show that reorganization and transfer of venue is appropriate, the plaintiffs primarily rely on *England v. New Century Financial Corp.*, from the Middle District of Louisiana. The court in that case denied conditional certification. Because potential opt-in plaintiffs had cognizable claims, the court granted them time to file individual actions, which would then be transferred to an appropriate venue. 370 F.Supp.2d 504, 511 (M.D.La. 2005).

The plaintiffs suggest that *England* recognized the authority of a court to transfer opt-in plaintiffs into another venue after decertification. This argument is misdirected for several reasons. *England* involved conditional certification, not decertification. Assuming that opt-in plaintiffs were part of the action, the court did not grant them a direct transfer of venue. Instead the court instructed those plaintiffs to *file separate actions*, which implies that they were either excluded or dismissed without prejudice from the failed collective action. Only after these filings did the court contemplate transfer of venue.

There is reason to believe, furthermore, that the remedy offered by in *England* is a novel one. It did not cite any authorities, other than 28 U.S.C. §§ 1406 and 1431, authorizing such a procedure. The first statute, § 1406, allows a court to transfer an improperly venued matter. The other statute, § 1431, allows a court to transfer venue where it lacks jurisdiction.

Because the plaintiffs are appropriately dismissed without prejudice, it is not necessary to decide transfer of venue. Even if this question were presented for decision before this Court, the plaintiffs allege no facts demonstrating that venue in the District of Minnesota is improper. So it is not reasonable to consider transfer for reasons of improper venue under § 1406. *Cf. Gilbert v. Texas Mental Health &*

4

*Mental Retardation*, 888 F.Supp. 775, 778 (N.D.Tex. 1995) (initially examining whether venue was

appropriate under 28 U.S.C. § 1404); *Professional Ass'n Travel Serv., Inc. v. Arrow Air, Inc.*, 597

F.Supp. 475, 476 (D.D.C. 1984) (considering facts that required transfer of venue).

In addition to transfer of venue, the plaintiffs also seek to add eighty-two opt-in plaintiffs who did

not timely file their consent to join this collective action. KFC does not oppose their joinder, in part

because it believes these plaintiffs may also be dismissed following decertification. Because this Court finds

it appropriate to dismiss all current opt-in plaintiffs without prejudice, the issue regarding any late opt-in

plaintiffs may be set aside as moot.

## III.   CONCLUSION

Because the plaintiffs concede that the existing opt-in plaintiffs, when examined as a whole, are not

similarly situated, this Court concludes decertification is appropriate. The plaintiffs contend that they may

be reorganized into state-by-state groups, to proceed as separate actions in other federal district courts.

But there is inadequate factual support and no legal support for this remedy. So this Court concludes it is

appropriate for the existing opt-in plaintiffs to be dismissed without prejudice. In accordance with ordinary

practice, this Court further concludes that the order should be stayed for an appropriate period, in which

the opt-in plaintiffs may separately re-file their actions.

## IV.   RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED THAT:**

1.   The plaintiffs' motion for decertification and to add new plaintiffs (Doc. No. 135) be

     **GRANTED IN PART AND DENIED IN PART** in accordance with the directions of

this report and recommendation.

2.   Existing opt-in plaintiffs in this action be **DISMISSED WITHOUT PREJUDICE** and

no further opt-in plaintiffs be permitted to join this action.

3.   Should an order adopt this report and recommendation, that order be **STAYED** for sixty

days.

Dated this 22nd day of January, 2007.          s/Jeanne J. Graham

_____

JEANNE J. GRAHAM
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by February 8, 2007. A party may respond to the objections within ten days after service. Any objections or responses filed under this rule shall not exceed 3,500 words. The District Court shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties stipulate that the District Court is not required, under 28 U.S.C. § 636, to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.

6

# EXHIBIT C

# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

Ray Ackerman et al. on behalf of
themselves and others similarly
situated,

                   Plaintiffs,

vs.

KFC Corporation,

                 Defendant.

Case No.: 0:07-cv-02656-PJS-JJG

**DEFENDANT'S NOTICE OF MOTION FOR AN ORDER DENYING CERTIFICATION OF A CLASS OR COLLECTIVE ACTION AND DISMISSING PLAINTIFFS**

TO:   Plaintiff Christian Parler, through his attorneys, Donald H. Nichols, Paul J. Lukas, and Michele R. Fisher, Nichols, Kaster & Anderson, PLLP, 4600 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402

PLEASE TAKE NOTICE that on September 6, 2007, at 9 a.m., at 180 E. Fifth Street, 7th Floor, in Courtroom 3, before The Honorable Patrick J. Schiltz, Defendant KFC Corporation will move the Court for an Order granting its Motion For An Order Denying Certification of a Class or Collective Action and Dismissing Plaintiffs.

Dated:  July 20, 2007

DORSEY & WHITNEY LLP


By:  ___s/ Robert R. Reinhart_____
Robert R. Reinhart, #0090566
Gabrielle D. Mead, #341575
50 South Sixth Street, Ste. 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600

Of Counsel:
Robert P. Davis
Diana L. Hoover
MAYER, BROWN, ROWE & MAW LLP          Attorneys for Defendant KFC Corporation
1909 K Street N.W.
Washington, D.C.  20006
Telephone:  (202) 263-3000

# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

Ray Ackerman et al. on behalf of
themselves and others similarly
situated,

                Plaintiffs,

vs.

KFC Corporation,

                Defendant.

Case No.: 0:07-cv-02656-PJS-JJG

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT'S
MOTION FOR AN ORDER DENYING
CERTIFICATION OF A CLASS OR
COLLECTIVE ACTION AND
DISMISSING PLAINTIFFS**

## INTRODUCTION AND SUMMARY OF THE MOTION

"The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation." *Hossaini v. W. Mo. Med. Ctr.*, 140 F.3d 1140, 1142 (8th Cir. 1998). Because Plaintiffs previously represented to this Court that their duties vary "from restaurant to restaurant" and therefore that they are not similarly situated, they are now judicially estopped from contradicting themselves, claiming that they are similarly situated, and seeking to proceed collectively or on behalf of a class.

The twenty-one named Plaintiffs in this case previously filed written consents to join <u>Christian Parler et al. v. KFC Corp.</u>, No. 0:05-cv-02198-PJS-JJG, a nationwide, conditionally certified collective action before this Court. In <u>Parler</u>, *Plaintiffs* moved to decertify the conditionally certified class. The position chosen by Plaintiffs as the *exclusive* basis for their Motion was *not* that their job duties vary from state to state, but rather that their "job duties vary from restaurant to restaurant." Plaintiffs successfully persuaded the Court to grant their motion based on their representations. As this Court put it, "Because their job duties differ on a restaurant-by-restaurant basis, the plaintiffs concede that they are *not* similarly situated." <u>Parler</u>, Dkt. No. 169 at 2 (emphasis added).

Plaintiffs now return to this Court seeking to pursue a statewide collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and a statewide, opt-out class action under the Minnesota Fair Labor Standards Act, Minn. Stat. § 177.21 *et seq.*, and Federal Rule of Civil Procedure 23. In this new action, in direct contradiction to the position they took in <u>Parler</u>, Plaintiffs represent to this Court that they and all other KFC Assistant Unit Managers ("AUMs") in Minnesota "*are* similarly situated under the

1

Federal Rules of Civil Procedure 23 [sic] ... and the [FLSA], 29 U.S.C. § 216(b)." Complaint ¶ 1 (emphasis added).[1]  For the reasons that follow, Plaintiffs are judicially and equitably estopped from claiming that they are similarly situated because their new position is fundamentally and directly inconsistent with the position that they successfully persuaded this Court to adopt in Parler.  Accordingly, because Plaintiffs are estopped from proceeding collectively or on behalf of a class, the Court should enter an order denying certification of a class or collective action, striking the relevant allegations in the Complaint, and dismissing all Plaintiffs other than the lead Plaintiff, Mr. Ackerman.[2]

## I.  Plaintiffs Are Judicially Estopped From Claiming That They Are Similarly Situated.

In  the Eighth Circuit, which is squarely in line with other federal (and state) authority, "[t]he doctrine of judicial estoppel prohibits a party from taking inconsistent posi-

---

[1]    Since this Court's June 4 Order decertifying the Parler collective action, Plaintiffs have filed a total of twenty-six lawsuits in state and federal courts around the country and advise that they will also file a lawsuit in New York in the near future. Davis Aff. ¶ 2. In six of these cases, Plaintiffs seek, as they have in Minnesota, to proceed collectively under the FLSA *and* pursue state-law claims on behalf of a putative, Rule 23-style opt-out class. *Id.* KFC anticipates that the New York Complaint will follow the same format. *Id.* In another seventeen cases, Plaintiffs seek to proceed collectively under the FLSA; some of these cases allege pendent state-law claims as well. *Id.* In addition, Plaintiffs have filed three other cases currently styled as single-plaintiff cases. *Id.* Finally, despite having pursued the Parler litigation for almost two years, 324 Plaintiffs have now filed demands for individual arbitration with the American Arbitration Association. A motion to enjoin Plaintiffs from pursuing these arbitrations on the ground that they have waived the right to arbitrate is pending in Parler. *See* Parler, Dkt. Nos. 185, 187.

[2]    "The defendant need not wait for the plaintiff to act" and "may move for an order denying class certification." 5 MOORE'S FEDERAL PRACTICE § 23.82[1] (3d ed.); *accord* 3 NEWBERG ON CLASS ACTIONS § 7.6 (4th ed.); 7AA WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1785 (3d ed.).

tions in the same or related litigation." *Hossaini*, 140 F.3d at 1142; *accord, e.g., Amtrust, Inc. v. Larson*, 388 F.3d 594, 600 (8th Cir. 2004). "[I]ts purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal citation and quotation marks omitted). "Such use of inconsistent positions would most flagrantly exemplify that playing fast and loose with the courts which has been emphasized as an evil the courts should not tolerate." *Scarano v. Cent. R.R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953) (internal quotation marks omitted), *cited with approval in New Hampshire*, 532 U.S. at 750.

Although "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," three "factors typically inform the decision whether to apply the doctrine in a particular case": (i) "a party's later position must be clearly inconsistent with its earlier position"; (ii) "courts regularly inquire whether the party ... succeeded in persuading a court to accept [its] earlier position"; and (iii) while it is not a formal element of a claim of judicial estoppel, courts frequently consider "whether the party ... would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. 750-51 (internal quotation marks and brackets omitted) (noting, however, that "these factors ... do not establish inflexible prerequisites"); *see Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004) (summarizing *New Hampshire*).

In this case, it is abundantly clear that all factors required for the judicial estoppel doctrine to be applied have been met: Plaintiffs have taken a position that is clearly in-

3

consistent with their prior representations in <u>Parler</u>; this Court accepted those prior representations in <u>Parler</u> as the basis for granting the motion for decertification requested by Plaintiffs; and, absent an estoppel against Plaintiffs relitigating the similarly situated issue twenty-four or more times, *see supra* note 1, Plaintiffs' inconsistency will impose on KFC an unfair detriment. Further, Plaintiffs' inconsistency amounts to an attempt to play "fast and loose" with no fewer than twenty-four courts by first representing to this Court that they are not similarly situated because their duties vary from restaurant to restaurant only to then return to this Court and at least twenty-three others to claim just the opposite. This is precisely the sort of "evil" that "the courts should not tolerate." *Scarano*, 203 F.2d at 513.

> **A.** **Plaintiffs' allegations that they are similarly situated are clearly inconsistent with their representations in <u>Parler</u> that Plaintiffs are not similarly situated because Assistant Unit Managers' job duties vary from restaurant to restaurant.**

In their Motion for Decertification in <u>Parler</u>, Plaintiffs repeatedly represented to the Court that AUMs' job duties "vary from restaurant to restaurant" and depend on the delegations of responsibilities by the AUMs' individual supervisors (Restaurant General Managers, or "RGMs"), resulting in "disparate factual and employment settings" that require "individualized" and "fact-specific" analyses under the FLSA's executive exemption.[3] According to Plaintiffs, these restaurant-to-restaurant variations and disparities

---

[3]      For example, among other things, Plaintiffs represented to the Court:

- "[Nancie Rodems (KFC's Rule 30(b)(6) designee)] repeatedly testified that [AUMs'] job duties and how much time they spend on 'non-exempt' versus 'exempt' activities *vary from restaurant to restaurant*." Parler, Dkt. No. 137 at 3 (emphasis added).

*(Continued on next page...)*

4

rendered them dissimilarly situated and required decertification of the <u>Parler</u> class. *See* Dkt. No. 137 at 8-9; *see also id.* at 7 (Plaintiffs acknowledge that decertification is appropriate when opt-ins are not similarly situated).

---

- "Whether or not AUMs are actually managing two or more full time employees when they are working *varies*. For example, how much time AUMs spend working with other members of the management team *varies from restaurant to restaurant*, and so does the number of team members working under these 'management' employees." *Id.* at 5 (emphases added; footnote omitted).

- "Rodems listed [fifteen different] duties that Defendant considers to be managerial in nature, but stated that whether or not the AUMs were actually performing these duties, and how much time was spent on these tasks *varied*.... Whether or not the AUM's supervisor, the Restaurant General Manager ('RGM') delegated any of these 'managerial' duties to an AUM *depended on the restaurant*." *Id.* at 3-4 (emphases added).

- "[Rodems] stated that the percentage of time AUMs spend working in ... hourly team member positions *varies from restaurant to restaurant. Id.* at 4 (emphasis added; footnote omitted).

- "***The extent and consequences of disparate factual and employment settings of the individual Plaintiffs warrant decertification.***" *Id.* at 8 (Plaintiffs' argument heading; bold and italics by Plaintiffs).

- "***The various defenses available to defendant which appear to be individual to each Plaintiff warrant decertification.***" *Id.* at 9 (Plaintiffs' argument heading; bold and italics by Plaintiffs).

- "Although Defendant is claiming the same exemption for each Plaintiff, the executive exemption, determining whether or not Defendant has proved this affirmative defense *will require a fact-specific analysis of the job duties performed by Plaintiffs*. As a result, decertification is warranted." *Id.* at 9 (emphasis added) (citing *Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144 (D. Minn. 2005)).

- "Defendant states that whether or not a RGM actually delegated any 'managerial' duties to an AUM, and which duties were delegated, *depended on the RGM*." *Id.* at 8 (emphasis added).

- "[The executive] exemption is an affirmative defense ... and according to [Rodems], *will involve an individualized analysis* of the job duties performed by [AUMs] from across the country." *Id.* at 6-7 (emphasis added).

Now, however, these same Plaintiffs have returned to this same Court representing that they are entitled to proceed on a statewide basis and that they "*are* similarly situated under the Federal Rules of Civil Procedure 23 [sic] ... and the [FLSA], 29 U.S.C. § 216(b)." Complaint (Dkt. No. 1) ¶ 1 (emphasis added); *see also, e.g., id.* ¶¶ 2-3, 14-22, 32, Pt. VII.B.3 (similar class- or collective-action allegations). These two positions are clearly inconsistent. Plaintiffs cannot represent to this Court in one action that *restaurant-by-restaurant* variations render them dissimilarly situated and require decertification and then immediately return to this Court maintaining that those same *restaurant-by-restaurant* variations are not a barrier to certification of a statewide action.[4] *Cf. Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 659-60 (7th Cir. 2004) (Posner, J.) ("In the previous round of this protracted litigation the defendants [successfully] urged the district court to accept the giant class as appropriate for a global settlement ... and so are now precluded by the doctrine of judicial estoppel from challenging its adequacy, at least as a settlement class....") (citing *New Hampshire, supra*).

**B.    Plaintiffs Successfully Moved To Decertify The Collective Action In <u>Parler</u> By Representing To This Court That Their Duties Vary From Restaurant To Restaurant and Thus They Are Not Similarly Situated.**

In the <u>Parler</u> case, *Plaintiffs* made the deliberate decision to move to decertify the conditionally certified class. Plaintiffs characterized their Motion for Decertification as "based *exclusively* upon the testimony of Defendant's Rule 30(b)(6) corporate designee," Nancie Rodems, who, according to Plaintiffs, "repeatedly testified that although Defen-

[4]    Plaintiffs' representations would be consistent only if KFC had only one restaurant in each state, at which all the Plaintiffs in the state worked. But such is not at all the case.

dant's general exemption policy is applied nationwide, the *Assistant Unit Managers' job duties vary from 'restaurant to restaurant.'*" Parler, Dkt. No. 137 at 1-2 (emphases added). Plaintiffs "[a]ccept[ed] this testimony as true" and argued that decertification was required due to "the 'disparate factual and employment settings of the individual plaintiffs.'" *Id.* at 2. As noted just above in Part I.A, Plaintiffs emphasized these restaurant-by-restaurant variations repeatedly and in great detail.

In response to Plaintiffs' Motion, and in reliance on Plaintiffs' representations (which the Court accurately called concessions, Parler, Dkt. No. 169 at 2), KFC explicitly agreed that Plaintiffs are not similarly situated and that decertification was appropriate *because of* the restaurant-by-restaurant variations in AUMs' job duties and the individualized inquiries that would be required under the FLSA's executive exemption. Parler, Dkt. No. 151 at 1. KFC was also clear, however, that, because Plaintiffs had admitted that AUMs' job duties vary significantly from restaurant to restaurant and that individualized inquiries into the circumstances of the individual Plaintiffs would be required, there was no basis for their stated plan to pursue numerous *statewide* collective or class actions in courts throughout the country. *Id.* at 1-2, 5. Specifically, KFC made clear that because Plaintiffs' plan was nothing more than an impermissible attempt "to have it both ways," *id.* at 1 (explaining the intrinsic conflict between Plaintiffs' representations about individualized restaurant-by-restaurant differences and the claim that Plaintiffs are similarly situated on a statewide basis), they would be judicially estopped from carrying it out (*id.* at 6). *See also id.* at 2 (repeated re-litigation of the "similarly situated" issue in nu-

7

merous courts "would impose an unnecessary burden on the federal court system, as well as on [KFC]").

In reply, Plaintiffs continued to press for decertification and transfers to new district courts but attempted to distance themselves from their prior, candid acknowledgements of predominating restaurant-by-restaurant variations. <u>Parler</u>, Dkt. No. 156. Consistent with KFC's assessment that they were trying to play fast and loose with the courts and to prejudice KFC by attempting "to have it both ways," Plaintiffs argued that although this Court should grant their Motion for Decertification based exclusively on the restaurant-by-restaurant variations they had presented to the Court, they should not be estopped from denying those very same variations in subsequent litigation. *Id.* at 5-7.

Plaintiffs' attempt in their reply to disavow and recharacterize their earlier representations fell flat as a matter of law and logic. In the Report and Recommendation ("R & R"), this Court stated succinctly: "In this litigation, collective certification was previously granted, and the *plaintiffs*, rather than the defendants, now move for decertification. Because their job duties differ on a restaurant-by-restaurant basis, the plaintiffs concede that they are not similarly situated." <u>Parler</u>, Dkt. No. 169 at 2 (emphasis by this Court). Based on Plaintiffs' representations, the R & R recommended that Plaintiffs' Motion for Decertification be granted.[5] *Id.* The Court approved the R & R, recognizing that it was based on Plaintiffs' representations. <u>Parler</u>, Dkt. No. 180 at 2.

---

[5]    The R & R, however, recommended that Plaintiffs' request for transfers to twenty-nine new district courts be denied because Plaintiffs failed to "adequately show[] a common policy, unique to employees in any particular state, that would justify their reorgani-
*(Continued on next page...)*

As part of the *New Hampshire* judicial estoppel analysis, courts also "regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position"—*i.e.*, whether there has been "judicial acceptance" of the position. 532 U.S. at 750. "Judicial acceptance" refers to a party's "success[] in getting the first court to accept the position." *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982), *cited with approval in New Hampshire*, 532 U.S. at 750. "A party need *not* finally prevail on the merits in the first proceeding. Rather, judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Id.* at 599 n.5 (emphasis added); *accord, e.g., In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999).

It is evident that this Court in Parler accepted Plaintiffs' representations that Plaintiffs were not similarly situated because their job duties vary from restaurant to restaurant. First of all, it is indisputable that these Plaintiffs successfully persuaded this Court to accept their earlier position, as this Court granted Plaintiffs the relief *they* requested, decertification of the collective action in Parler. In addition, Plaintiffs not only elected to move for decertification, but also chose to base their request for relief upon their representations that their job duties vary restaurant-by-restaurant, not state-by-state, and the R & R and subsequent Order decertifying the class were based explicitly on those representations. In the R & R, this Court explained, "In this litigation, collective certification was

zation into state-by-state groups." Parler, Dkt. No. 169 at 3-4. Indeed, the R & R observed that "it is probable ... that such groups would not even qualify for *conditional* certification." *Id.* at 4 (emphasis added); *see also id.* at 5 ("[T]here is inadequate factual support and no legal support for this remedy.").

previously granted, and the *plaintiffs*, rather than the defendants, now move for decertification.  Because their job duties differ on a restaurant-by-restaurant basis, the plaintiffs concede that they are not similarly situated." Parler, Dkt. No. 169 at 2 (emphasis by the Court); *see also* Parler, Dkt. No. 180 (adopting the recommendation and noting that it was based on "statements made by plaintiffs in their papers," not "any factual finding," and that "[t]hose statements speak for themselves.").

Moreover, as a logical matter, because Plaintiffs relied "exclusively" on these restaurant-by-restaurant variations (Parler, Dkt. No. 137 at 1-2), and because the Court stated that it "was not ... making any factual finding" (Parler, Dkt. No. 180 at 2; *see also* Parler, Dkt. No. 169 at 3 ("this Court declines ... to make findings")), the Court necessarily accepted Plaintiffs' representations that their duties vary by restaurant.  At the time of the court's ruling, the representations and record before the Court, deliberately selected by Plaintiffs and agreed to by KFC, reflected only restaurant-by-restaurant variations.  As such, this record was the only basis for the Order decertifying the action. *See* Parler, Dkt. No. 169 at 3-4 (stating that "plaintiffs did offer evidence supporting their reorganization into state-by-state groups" or "adequately show[] a common policy, unique to employees in any particular state, that would justify [such a] reorganization").

Thus, because the Court necessarily accepted Plaintiffs' prior position that decertification was warranted because Plaintiffs were not similarly situated because their job duties vary restaurant-by-restaurant, not state by state, the second *New Hampshire* factor is also satisfied, and Plaintiffs should be judicially estopped from seeking to proceed collectively or on behalf of a class.

### C.  Plaintiffs will impose an unfair detriment on KFC if they are not estopped from asserting inconsistent positions.

While it is not a formal prerequisite to a claim of judicial estoppel, courts frequently consider a third factor: whether the party asserting an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party. *See New Hampshire*, 532 U.S. at 751; *Alternative Sys. Concepts*, 374 F.3d at 33. "However, as a practical matter, where the first two components have been satisfied, this third factor is virtually certain to be present, as judicial acceptance of a party's position will ordinarily redound to the benefit of that party." *Otis v. Arbella Mut. Ins. Co.*, 824 N.E. 2d 23, 30 (Mass. 2005). Therefore, it is ordinarily unnecessary to consider the third factor separately once it is shown that, as in this case, a party has maintained successfully one position and then taken a contradictory position in search of some new advantage. *Id.*; *accord, e.g., Alternative Sys. Concepts*, 374 F.3d at 33 ("Judicial acceptance and partisan benefit normally are two sides of the same coin (after all, it is unlikely that a party will advance a particular position unless that position benefits its cause)."). Accordingly, this Court's acceptance of Plaintiffs' inconsistent position in Parler should, of its own force, end the inquiry and establish that judicial estoppel is appropriate.

To the extent, if any, that a detriment must be shown, that detriment (and the corresponding advantage to the other party) may derive from either the initial position taken or the subsequent, inconsistent position. *See, e.g., New Hampshire*, 532 U.S. at 755 ("Having convinced this Court to accept one interpretation ..., and having *benefited* from that interpretation, New Hampshire [is] now [estopped from urging] an inconsistent in-

terpretation to gain an *additional advantage* at Maine's expense.") (emphases added).
With respect to the former, although the initial benefit may have been *obtained* legiti-
mately, it would be inherently unfair to allow the party to *retain* that benefit *and* repudi-
ate the very position that supported it. Put simply, parties "cannot have their cake and eat
it too." *E.g.*, *In re Superior Crewboats, Inc.*, 374 F.3d 330, 333 (5th Cir. 2004). And
with respect to the latter, it has been observed that such cases implicate even "more than
affront to judicial dignity," "[f]or intentional self-contradiction is being used as a means
of obtaining unfair advantage in a forum provided for suitors seeking justice." *Scarano*,
203 F.3d at 513.

    In this case, the affront to judicial dignity and the unfair detriment to KFC is that,
if Plaintiffs are not estopped, the court system and KFC will be forced to address at least
twenty-four times the very question—whether Plaintiffs are "similarly situated"—on
which this Court has already ruled at Plaintiffs' request and based on Plaintiffs' represen-
tations of restaurant-to-restaurant variations. *See supra* note 1. Particularly in light of the
evident weakness of Plaintiffs' case both as to class certification[6] and on the merits,[7]
Plaintiffs' inconsistency would impose an enormous detriment on KFC: by Plaintiffs hav-

---

[6]    As the R & R in <u>Parler</u> observed, "it is probable … that [Plaintiffs] would not even
qualify for *conditional* certification." <u>Parler</u>, Dkt. No. 169 at 4 (emphasis added).

[7]    KFC's position on the merits of Plaintiffs' claims is supported by longstanding
and well-settled precedent and Department of Labor regulations. *See generally Murray v.
Stuckey's, Inc.*, 939 F.2d 614 (8th Cir. 1991); *Donovan v. Burger King Corp.*, 675 F.2d
516 (2d Cir. 1982); *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir. 1982); 29
C.F.R. Part 541; 69 Fed. Reg. 22121 (Apr. 23, 2004) (citing *Murray* and the *Burger King*
cases with approval).

ing first used the conditional certification procedure in <u>Parler</u> to assemble a nationwide group of Plaintiffs, and then obtained decertification by representing that they are not similarly situated and that their duties vary from restaurant to restaurant, Plaintiffs' repudiation of that position would increase exponentially KFC's cost of defense (which already easily exceeds $1,000,000, *see* <u>Parler</u>, Dkt. No. 187 at 3) by forcing it to relitigate the "similarly situated" issue twenty-four or more times. *Cf.* Randy J. Kozel & David Rosenberg, *Solving the Nuisance-Value Settlement Problem: Mandatory Summary Judgment*, 90 VA. L. REV. 1849, 1856 (2004) ("if a plaintiff can file a suit at a cost cheaper than the cost to the defendant of defeating that suit, then there is the potential for a nuisance-value settlement"). Plaintiffs' attempt to force the court system to bear the concomitant burden of addressing as many class certification motions—despite Plaintiffs' prior representations that class certification is *not* appropriate—would likewise be an affront to judicial dignity.

**II.    Plaintiffs Are Also Equitably Estopped From Claiming That They Are Similarly Situated.**

The doctrine of equitable estoppel provides an independent basis for estopping Plaintiffs from claiming that they are similarly situated. "Equitable estoppel prevents a party from [1] denying a state of facts that he has previously asserted to be true if the party to whom the representation was made [2] has acted in reliance on the representation and [3] will be prejudiced by its repudiation." *Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737 (8th Cir. 1987); *accord, e.g., Amtrust, Inc.*, 388 F.3d at 601. Unlike the doctrine of judicial estoppel, which is intended to protect the integrity of the judicial system itself,

the purpose of equitable estoppel is to prevent litigants from being prejudiced by an op-ponent's inconsistency. *Total Petroleum*, 822 F.2d at 737 n.6. This distinction explains why judicial estoppel does not require the proof of prejudice and reliance needed to es-tablish equitable estoppel. *Id.*; *see also, e.g., Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.*, 4 F.3d 605, 609 (8th Cir. 1993) (same).

Here, Plaintiffs are attempting to "deny a state of facts that [they] previously as-serted to be true"—namely, their prior representations that they were not similarly situ-ated based on restaurant-to-restaurant (not state-by-state) variations in their duties. *See* Part I.A, *supra* (discussing the extensive record of Plaintiffs' representations on restau-rant-by-restaurant differences and the need for individualized determinations). Second, KFC acted in explicit reliance on their prior concessions. KFC was clear in its response that it agreed that decertification was appropriate *because* Plaintiffs had chosen to con-cede that they were not similarly situated *because* their duties varied from restaurant to restaurant. Parler, Dkt. No. 151 at 1. Finally, KFC would be severely prejudiced by Plaintiffs' "repudiation" of their prior representations because of the enormous incre-mental costs it would incur in defending the same issue twenty-four or more times fol-lowing Plaintiffs' concession in Parler that they are not similarly situated because their duties vary from restaurant to restaurant. *See* Part I.C, *supra*. Accordingly, equitable es-toppel applies in this case and provides an independent basis for granting this Motion.

## CONCLUSION

Plaintiffs' allegation in this case that they are "similarly situated" and effort to maintain a collective action and a class action are clearly inconsistent with their represen-

tations in <u>Parler</u>. This Court accepted Plaintiffs' <u>Parler</u> representations that their own job duties vary substantially "from restaurant to restaurant." Further, Plaintiffs' inconsistency would be a clear affront to the judicial system and impose an unfair detriment on KFC. Accordingly, because Plaintiffs are judicially and equitably estopped from proceeding collectively or on behalf of a class, this Court should enter an order denying certification of a class or collective action, striking the relevant allegations in the Complaint, and dismissing all plaintiffs other than the lead Plaintiff, Mr. Ackerman, from this action.

Dated:  July 20, 2007

DORSEY & WHITNEY LLP

By:  __s/ Robert R. Reinhart_____
Robert R. Reinhart, #0090566
Gabrielle D. Mead, #341575
50 South Sixth Street, Ste. 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600

Of Counsel:
Robert P. Davis
Diana L. Hoover
MAYER, BROWN, ROWE & MAW LLP
1909 K Street N.W.
Washington, D.C. 20006
Telephone: (202) 263-3000

Attorneys for Defendant KFC Corporation

# EXHIBIT D

# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

CHRISTIAN PARLER Carmen Brooks, Arturo Neyra, Linda Rodriguez, David Thames, Thomas Wellman, and Troy Williams, individually and on behalf of others similarly situated,

Court File No. 05-2198 PJS/JJG

**DEFENDANT'S MOTION FOR AN ORDER DECLARING THAT PLAINTIFFS HAVE WAIVED THEIR RIGHT TO ARBITRATE AND ENJOINING PLAINTIFFS FROM PURSING ARBITRATION**

Plaintiffs,

vs.

KFC Corporation,

Defendant.

Defendant KFC Corporation hereby moves the Court for an Order Declaring That Plaintiffs Have Waived Their Right To Arbitrate And Enjoining Plaintiffs From Pursing Arbitration. Defendant's Motion is based upon all the files, records, and proceedings, the memorandum and other supporting documents to be submitted in connection with this motion.

Dated:  June 28, 2007                         DORSEY & WHITNEY LLP

                                                   /s/ Robert R. Reinhart
                                        By:  Robert R. Reinhart #0090566
                                             Gabrielle D. Mead #0341575
                                             Suite 1500, 50 South Sixth Street
                                             Minneapolis, MN 55402-1498
                                             Telephone:  (612) 340-2600

                                             Robert P. Davis (*admitted pro hac vice*)
                                             Robert C. Varnell (*admitted pro hac vice*)
                                             MAYER, BROWN, ROWE & MAW LLP
                                             1909 K Street N.W.
                                             Washington, D.C.  20006
                                             Telephone:  (202) 263-3000

                                             *Attorneys for Defendant KFC Corporation*

# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

CHRISTIAN PARLER Carmen
Brooks, Arturo Neyra, Linda
Rodriguez, David Thames, Thomas
Wellman, and Troy Williams,
individually and on behalf of others
similarly situated,

              Plaintiffs,

vs.

KFC Corporation,

              Defendant.

Court File No. 05-2198 PJS/JJG

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT'S
MOTION FOR AN ORDER
DECLARING THAT PLAINTIFFS
HAVE WAIVED THEIR RIGHT TO
ARBITRATE AND ENJOINING
PLAINTIFFS FROM PURSUING
ARBITRATION**

## INTRODUCTION AND SUMMARY OF THE MOTION

For the reasons set forth below, KFC requests an Order (i) declaring that the 324 Plaintiffs who opted into this action (out of a total of 993 opt-in Plaintiffs) in late 2005 and early 2006, but who now have filed arbitration demands with the American Arbitration Association ("AAA"), have waived their right to arbitrate; (ii) enjoining Plaintiffs from pursuing arbitration of their claims; and (iii) staying the August 3, 2007 effective date of the Court's Order dismissing all opt-in Plaintiffs without prejudice (Dkt. No. 180) to the extent necessary to address this Motion and enforce the Court's ruling.[1]

Twenty-one months ago, Plaintiffs commenced this putative nationwide collective action, alleging that KFC had violated the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 201 *et seq.*, by failing to pay overtime to Assistant Unit Managers ("AUMs") at its restaurants. Based upon the relatively lenient standard for conditional certification available in the judicial forum, KFC stipulated to conditional certification of a nationwide class. Plaintiffs then used this process to send notice to more than 3,500 potential class members using contact information provided by KFC, and 993 AUMs, including the 324 who now demand arbitration, opted to assert claims for overtime through this action. The parties then conducted extensive discovery at considerable time and expense.

In October 2006, after using the judicial forum to secure its nationwide client base, Plaintiffs abruptly reversed course and asked this Court to decertify this action and

---

[1]    The Court entered the dismissal order on June 4, 2007, but stayed it for sixty days. Dkt. No. 180 at 3.

1

transfer their claims to twenty-nine new federal district courts. This Court appropriately denied Plaintiffs' unprecedented mass transfer request as lacking any factual or legal basis. Now, only after first abandoning their attempted nationwide action and then failing to secure transfers to new federal district courts, and after making extensive use of the liberal federal discovery rules not available in arbitration, 324 Plaintiffs have made another sudden U-turn and filed 324 individual demands for arbitration with the AAA, requesting arbitration in more than 175 cities throughout the United States.[2]

As explained below, these Plaintiffs long ago waived their right to arbitrate by initiating and vigorously pursuing litigation in this Court. Because waiver is clearly established, KFC requests that this Court rule that Plaintiffs have waived their right to arbitrate and enjoin them from pursuing arbitration.

## ARGUMENT

**I.    Plaintiffs Waived Their Right To Arbitrate By Extensively Litigating Their Claims Before This Court At Great Expense And Prejudice To KFC.**

Only weeks ago, the Eighth Circuit reiterated that a party waives its right to arbitrate if it "(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." *Lewallen v. Green Tree Servicing, LLC,* --- F.3d ---, 2007 WL 1583876, at *3 (8th Cir. June 4, 2007).[3]

---

[2]    In the last three weeks, Plaintiffs have also filed twenty-five lawsuits in state and federal courts across the country, most styled as putative collective or class actions. Plaintiffs' counsel has advised KFC that two additional lawsuits will be filed in the near future. Affidavit of Robert C. Varnell ("Varnell Aff.") ¶ 6.

[3]    Recent cases designated for publication for which official citations are not yet available and unpublished cases are attached to the Varnell Aff. as Exhibits "I" to "N".

Here, all three requisites are satisfied. Plaintiffs knew they had a right to arbitrate because they signed arbitration agreements at the outset of their KFC employment and because Plaintiffs' counsel learned of those agreements early on in this case. They also "acted inconsistently with that right" by invoking and then vigorously engaging in the litigation process as briefly outlined above and discussed in greater detail below. Finally, their actions have substantially prejudiced KFC, as the parties have already engaged in extensive discovery, including more than forty depositions, and briefed and argued several significant motions, all of which would have been unnecessary in arbitration. Moreover, while these 324 Plaintiffs pursued this action, the AAA increased the non-refundable, per-arbitration filing fee that it charges employers from $625 to $900, meaning that KFC now faces initial arbitration fees alone totaling nearly $300,000—almost $90,000 more than if Plaintiffs requested arbitration when they opted into this action in late 2005 and early 2006—not to mention hundreds of thousands of dollars for AAA administrative expenses and arbitrators' fees that KFC would be forced to incur if Plaintiffs were allowed to shift to the arbitral forum at this late date. In short, by forcing KFC to spend almost two years and well over $1,000,000 defending this action in this Court before ever surfacing the possibility of arbitration, Plaintiffs have waived the right to arbitrate. Varnell Aff. ¶¶ 5 & 13.

## A.     Plaintiffs knew of their right to arbitrate.

Plaintiffs cannot deny their awareness of their right to arbitrate. First, Plaintiffs knew that they had a right to arbitrate because they signed arbitration agreements at the outset of their KFC employment. It is black-letter law that one "who signs or accepts a

3

written contract is conclusively presumed to know its contents and to assent to them."

*Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (internal quotation marks and ellipses omitted). This rule applies to arbitration agreements with equal force. *Id.*; *see also N & D Fashions v. DHJ Indus., Inc.*, 548 F.2d 722, 727-28 (8th Cir. 1976). In any event, KFC produced to Plaintiffs' counsel the arbitration agreement for the named plaintiff, Christian Parler, in November 2005—indeed, it was one of the very first documents produced in this case—and the remaining personnel files containing these Plaintiffs' arbitration agreements were produced by summer 2006. Varnell Aff. ¶ 1 & Ex. A thereto. Thus, even after KFC provided Plaintiffs with copies of their signed agreements, Plaintiffs pushed forward with litigation. Accordingly, the first requisite of the Eighth Circuit's waiver test is easily established.

### B.    Plaintiffs "acted inconsistently" with the right to arbitrate.

In *Lewallen*, the Eighth Circuit defined the extent of participation in litigation that is inconsistent with a subsequent demand for arbitration:

> A party acts inconsistently with its right to arbitrate if the party "substan-
> tially invokes the litigation machinery before asserting its arbitration right."
> A party substantially invokes the litigation machinery when, for example, it
> files a lawsuit on arbitrable claims, engages in extensive discovery, or fails
> to move to compel arbitration and stay litigation in a timely manner.[4]

The Plaintiffs who now demand arbitration took each of these three steps that the Eighth Circuit deemed independently sufficient to establish a substantial invocation of the litigation machinery. First, they all filed consents explicitly electing to join this

---

[4]    *Lewallen*, --- F.3d at ---, 2007 WL 1583876 at *3 (brackets omitted) (quoting *Rit-zel Commc'ns v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993)) (quoting, in turn, *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 559 F.2d 268, 269 (5th Cir. 1977)).

4

litigation in Minnesota. Second, over the course of the next year, Plaintiffs used the
liberal federal discovery rules to engage in extensive discovery, much of it related to
issues not relevant in arbitration. *See generally* Varnell Aff. ¶¶ 8-13. Finally, Plaintiffs
also engaged in extensive motion practice, including a Motion to Dismiss KFC's parent
company, Yum! Brands, Inc.;[5] a discovery motion related to privilege issues arising out
of their deposition of a Yum! in-house counsel;[6] a Motion to Amend the Complaint to
add class claims under eight different state wage and hour laws;[7] and, ultimately,
Plaintiffs' own Motion for Decertification and Motion to Add Plaintiffs.[8] Then, even
after deciding to abandon the nationwide collective action they initiated, Plaintiffs asked
to have their claims transferred to twenty-nine other district courts (Dkt. Nos. 135 &
137), demonstrating their continued efforts and desire to use "the litigation machinery."
At no point during this lengthy and expensive process did they express any interest in
arbitration. Varnell Aff. ¶ 5. Thus, Plaintiffs have thus substantially invoked the

---

[5]    Yum! moved to dismiss for lack of personal jurisdiction and on the ground that it
was not Plaintiffs' employer under the FLSA. *See* Dkt. Nos. 2 & 10.

[6]    The issue was resolved on letter briefs and a telephonic hearing with Magistrate
Judge Graham. Dkt. Nos. 147, 149, & 150.

[7]    Plaintiffs' Motion to Amend raised various issues of subject matter jurisdiction
and discretionary supplemental jurisdiction, which the parties briefed (*see* Dkt. Nos. 97 &
111) and argued (Dkt. No. 115), and which Magistrate Judge Graham addressed in detail
in a written opinion (Dkt. No. 118).

[8]    The parties fully briefed and argued this motion. *See* Dkt. Nos. 137, 151, & 156.
Magistrate Judge Graham also addressed this motion in detail in a written opinion. Dkt.
No. 169. Plaintiffs subsequently objected to certain portions of Judge Graham's recom-
mended order (Dkt. No. 170), requiring further response from KFC (Dkt. No. 173), and a
final ruling from this Court (Dkt. No. 180).

litigation machinery in a number of ways, any one of which would independently satisfy the Eighth Circuit's test laid out in *Lewallen*.

Lewallen noted that, to safeguard its right to arbitration, "a party must 'do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration.'" --- F.3d at ---, 2007 WL 1583876, at *4 (quoting *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 391 (7th Cir. 1995)). Applying this principle, the Court noted that "Green Tree could have requested arbitration approximately eleven months sooner than it did," and held this delay "inconsistent with its right to arbitrate." *Id.* at *5. Similarly, in *Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157, 158 (8th Cir. 1991), the Eighth Circuit found a six-month delay in moving to compel arbitration, coupled with engaging in discovery on arbitrable claims, inconsistent with the right to arbitrate. *See also S & H Contractors, Inc. v. A. J. Taft Coal Co., Inc.,* 906 F.2d 1507, 1514 (11th Cir. 1990) (eight-month delay between filing of complaint and demand for arbitration, during which party took five depositions and opponent filed two motions, was inconsistent with right to arbitrate). Here, by way of comparison, twenty-one months passed from the time this litigation was filed until 324 Plaintiffs requested arbitration.

Of course, "invoking the litigation machinery" is a matter of conduct as well as the passage of time. Thus, the Eighth Circuit found in *Lewallen* that "Green Tree's actions in serving discovery requests on Lewallen … were inconsistent with its right to arbitrate." --- F.3d at ---, 2007 WL 1583876, at *6. Green Tree's requests included "lengthy interrogatories and requests for production of documents," and the Court noted that

6

"Green Tree also sought an extension of time to respond to Lewallen's discovery requests." *Id.* at *6; *see also S & H Contractors*, 906 F.2d at 1514 (five depositions). Here, Plaintiffs utilized the discovery mechanisms of the Federal Rules to a far greater extent: Plaintiffs served, and KFC responded to, multiple sets of document requests and interrogatories, requiring KFC, at great expense, to produce approximately *sixty thousand* pages of documents and approximately *4.4 million* electronic records. Varnell Aff. ¶ 8. In addition, there have been, at great expense, over forty depositions in seventeen different cities. *Id.* ¶ 9.

Finally, as noted above, Plaintiffs invoked the litigation machinery by filing, opposing, briefing, and/or arguing a series of significant motions. *See supra* notes 5-8. Here, too, Plaintiffs set a new standard for inconsistency with arbitration. *Compare with, e.g., S & H Contractors*, 906 F.2d at 1514 (plaintiff waived its right to arbitrate by, *inter alia*, allowing defendant to file two motions before it moved to compel arbitration); *Bezzard v Securitas Sec., Inc.,* 2006 WL 297749, at *2-*4 (E.D. Ark. Feb. 8, 2006) (defendant waived its right to arbitrate by responding to plaintiff's motion to amend complaint before moving to compel arbitration).

In sum, the course Plaintiffs have charted could not have diverged further from arbitration: Professing a desire to pursue a nationwide collective action in this Court, Plaintiffs initiated this litigation, took advantage of the FLSA notice process to enlist 993 present and former KFC AUMs from across the United States to join this lawsuit, took advantage of the liberal discovery provisions of the Federal Rules of Civil Procedure to obtain discovery not available in arbitration, and then, again on their own initiative,

7

abruptly switched course to move to the arbitral forum. In light of this history, there can be no dispute that Plaintiffs acted inconsistently with their known right to arbitrate—indeed, that they have done so to an extent far exceeding the threshold defined by case law in the Eighth Circuit and other courts.

### C. KFC will be greatly prejudiced by these Plaintiffs' inconsistent acts and delay, making a finding of waiver particularly appropriate.

KFC also easily establishes prejudice. KFC has been required to bear substantial expense related to the extensive discovery and motion practice outlined above that it would not have incurred had Plaintiffs timely elected to arbitrate their claims. In addition, AAA's per-arbitration employer filing fee is now almost 50% higher than it was when those Plaintiffs chose to join this action instead of proceeding directly to arbitration. Finally, as a matter of common sense, there can be no doubt that Plaintiffs' litigation conduct has been inherently prejudicial to KFC. Plaintiffs did not merely select a judicial forum initially; they carried their lawsuit all the way through the close of discovery and beyond and used this litigation to generate 993 litigants—including the 324 who now seek to bring arbitration actions more than 175 cities throughout the United States.

### 1. The extensive discovery and motion practice in this Court prejudiced KFC.

The Eighth Circuit has observed that "[p]rejudice results when, *inter alia*, parties use discovery not available in arbitration ... or ... arbitration would require a duplication of efforts." *Kelly v. Golden*, 352 F.3d 344, 349 (8th Cir. 2003)); *accord Lewallen*, ---F.3d at ---, 2007 WL 1583876 at *6. The cost of such discovery, including such items as

attorneys' fees, travel expenses, and court reporters' and videographers' fees, will also

support a finding of prejudice. *See, e.g., Robinson v. Food Serv. of Belton, Inc.*, 415 F.

Supp. 2d 1221, 1224-26 (D. Kan. 2005) (attorneys' fees and transcript costs relating to

depositions); *Paw Paw's Camper City, Inc. v. Hayman*, --- So.2d ---, 2007 WL 1454442,

at *5 (Ala. May 18, 2007) (deposition-related costs). The greater the accumulated effort

and expense, the more easily prejudice is found. *See, e.g., Bezzard*, 2006 WL 297749, at

*2-*4 (plaintiff established prejudice under Eighth Circuit precedent where defendant

delayed seeking arbitration for six months, litigated the issue of whether plaintiff had

waived her right to a jury trial, and proposed a discovery schedule); *Freiburger v. Snap-*

*On Tools Co.*, 2002 WL 32172381, at *2-*3 (N.D. Iowa Feb. 20, 2002) (plaintiff

established prejudice under Eighth Circuit precedent where defendant delayed for

eighteen months in seeking arbitration, during which time it removed case to federal

court, answered the complaint and plaintiff's interrogatories, took the plaintiff's

deposition, and attended another deposition); *Eagle Traffic Control, Inc. v. James Julian,*

*Inc.*, 945 F. Supp. 834, 835 (E.D. Pa. 1996) (prejudice established where the parties

engaged in extensive discovery, including ten depositions, and litigated several discovery

motions).

    As noted, the parties have engaged in extensive discovery. Much of this discovery

was driven by the nationwide nature of Plaintiffs' lawsuit and the need to address the

question whether Plaintiffs are "similarly situated." Indeed, after Plaintiffs further used

the judicial process to amend their complaint to add seven putative state-law class

actions, KFC had to depose all seven putative class representatives located around the

country and propound a second set of written discovery requests addressed specifically to the putative state-law class representatives and issues related to class-certification. Varnell Aff. ¶ 12. While an arbitrator might have allowed some discovery regarding the particulars of an individual AUM's claim, it would not have been as extensive as that available in this Court, nor would it have needed to delve into class-related issues. *E.g.*, *Paw Paw's Camper City*, --- So.2d at ---, 2007 WL 1454442, at *5 (assuming, in the absence of any indication to the contrary, that "the arbitrator would have exercised its discretion in favor of allowing no discovery"); Richard A. Bales, COMPULSORY ARBITRATION: THE GRAND EXPERIMENT IN EMPLOYMENT 150 (1997) ("Discovery is generally less available in arbitration than in litigation....").

For example, in an individual arbitration, there would have been no need for Plaintiffs to depose multiple KFC executives or conduct discovery on matters such as corporate structure or information processes. In another recent case in this District, Plaintiffs' counsel here readily acknowledged the cost and significance of such discovery. *See West v. Border Foods, Inc.*, 2007 WL 1725760, at *1 (D. Minn. June 8, 2007) (noting Nichols Kaster & Anderson's contention "that the parties conducted significant discovery regarding liability, corporate structure, payroll processes, information systems, and hours worked"). KFC agrees that such discovery was a significant burden.

Nor would KFC have had any incentive to incur the expenses necessary to depose an individual AUM claimant in advance of a one-day, small-stakes arbitration hearing on the AUM's individual wage-and-hour claim. In contrast, as a result of Plaintiffs' decision to pursue their claims in court, over forty depositions have been taken in

seventeen different cities across the United States at great expense to KFC (Varnell Aff. ¶ 9); none of these depositions would have been necessary in arbitration. The costs associated with such depositions were substantial. For example, KFC's court reporter and videographer costs alone totaled over $73,000. *Id.* ¶ 10. That, of course, does not even include the far more significant attorneys' fees and travel costs associated with these depositions. *Id.* Because these costs would not have been incurred in arbitration, KFC would be prejudiced if Plaintiffs were permitted to pursue arbitration at this late date.[9] *See, e.g., Huntington Bank v. Merrill Lynch, Pierce, Fenner & Smith*, 77 F.3d 479 (table), 1996 WL 46808, at *3-*4 (5th Cir. Jan. 15, 1996) (unpublished) (prejudice established where plaintiff filed a lawsuit and took five depositions rather than immediately seeking a court order requiring arbitration). As the Eleventh Circuit put it in a case involving far less extensive discovery and litigation-related activity than is at issue here, "[s]ignificant prejudice ... may be inferred from the extent of discovery in this case." *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1544-44 (11th Cir. 1990) (defendant moved to compel

---

[9]    Sara Ramos, one of the Plaintiffs now demanding arbitration, presents a particularly clear and egregious instance of prejudice. After counsel for KFC traveled from Washington, DC, to Houston, Texas, Ms. Ramos simply failed to show up for her duly noticed deposition, which KFC had already rescheduled once at Plaintiffs' request. Varnell Aff. ¶ 11 & Exs. F & H thereto. When KFC sought to re-notice her deposition, Plaintiffs' counsel advised: "[Ms. Ramos] will not communicate with us about her deposition. At this point we have made every effort to get her to appear and are unable to confirm her appearance. I do not want to waste the attorneys' time traveling to her deposition when it seems clear she will not attend." *Id.* & Ex. G thereto. KFC responded: "Given Ms. Ramos' unwillingness to cooperate in discovery, Defendant requests that she withdraw from the litigation, and we reserve our right to seek her withdrawal, as necessary." *Id.* Although Plaintiffs' counsel promised to "send her a withdrawal form," Ms. Ramos never withdrew and now, after refusing to show up for her deposition or even communicate with her attorneys, has apparently decided that she would like to give arbitration a try. *Id.* & Exs. G & B thereto.

arbitration less than two months before discovery closed and after a twenty-month delay, during which time it had deposed the plaintiff and answered multiple discovery requests and both parties had scheduled additional depositions).

Likewise, substantial costs relating to motion practice (*see supra* notes 5-8) would not have been incurred in arbitration. A single-claimant arbitration would have involved a straightforward assessment of the claimant's duties and whether the claimant was properly classified as exempt from the FLSA's overtime requirements. *See Lewallen*, --- F.3d at ---, 2007 WL 1583876, at *6 ("because they have had to litigate the motion to compel arbitration in the middle of [judicial] proceedings instead of earlier, the parties have been deprived of arbitration's main purpose: efficient and low-cost resolution of disputes") (internal quotation marks omitted). It certainly would *not* have required the substantial legal research necessary to brief Yum!'s Motion to Dismiss, Plaintiffs' Motion to Amend the Complaint, and Plaintiffs' Motion for Decertification and to Add Plaintiffs, not to mention preparation for and travel to hearings on Plaintiffs' motions. *See, e.g., S & H Contractors*, 906 F.2d at 1514 (prejudice established where, during eight-month delay, party filed two motions and took five depositions); *Huntington Bank*, 1996 WL 46808, at *3-*4 (prejudice established where plaintiff filed a lawsuit and opposed various motions filed against it rather than immediately seeking to compel arbitration).

## 2. The nationwide collective action pursued by Plaintiffs compounds the prejudice suffered by KFC.

KFC has thus established ample prejudice of the types identified in the many cases discussed above that find waiver—namely, substantial discovery that would be wasted or unnecessary in arbitration and motions and other litigation-related activity that would never have occurred had Plaintiffs timely sought arbitration. While this alone is more than adequate to establish waiver, it bears emphasis that the prejudice in this case is necessarily compounded by the nationwide, collective nature of the proceedings that these Plaintiffs so long tried to pursue. Recognizing that, at the notice-stage of FLSA cases, courts apply a "fairly lenient standard" that "typically results" in conditional certification and distribution of notice upon only a "modest factual showing" of similarity, *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006) (internal quotation marks omitted), KFC agreed to stipulate to conditional certification. Dkt. No. 51. Having obtained the benefit of the FLSA's opt-in procedural mechanism, Plaintiffs enlisted 993 Plaintiffs to join this collective action, and KFC pursued discovery with an eye toward a motion to decertify the class and/or a motion for summary judgment based on the well-settled case law that assistant managers in the restaurant industry such as Plaintiffs are exempt from the FLSA's overtime requirements.[10] While arbitration might have been an efficient, cost-effective method of dispute resolution at one point, that is no longer the case now that KFC has invested enormous amounts of time and resources

---

[10]    *See generally Murray v. Stuckey's, Inc.*, 939 F.2d 614 (8th Cir. 1992); *Donovan v. Burger King Corp.*, 675 F.2d 516 (2d Cir. 1982); *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir. 1982); 29 C.F.R. Part 541; 69 Fed. Reg. 22121 (Apr. 23, 2004) (citing *Murray* and the *Burger King* cases with approval).

toward a strategy that does not translate into arbitration. *See, e.g.,* Lewis L. Maltby, *Employment Arbitration and Workplace Justice*, 38 U.S.F. L. REV. 105, 113 (2003) ("Summary judgment in AAA [employment] arbitration is so rare as to be statistically insignificant.").

**3.    Plaintiffs' excessive delay has driven up the cost of arbitration itself.**

The prejudice that KFC has suffered would be further compounded because arbitrating the 324 claims now will be considerably more costly than if Plaintiffs had promptly sought arbitration.  AAA's current nonrefundable, per-arbitration employer filing fee, $900 per arbitration, took effect on July 1, 2006—well after Plaintiffs filed this lawsuit and the opt-in period had closed.  *See* AAA Employment Dispute Resolution Rules (effective July 1, 2006).  Prior to that time, the fee was only $625.  *See* [Archived] National Rules for the Resolution of Employment Disputes (effective Jan. 1, 2004), Administrative Fee Schedule, *available at* http://www.adr.org/sp.asp?id=26405.  Thus, in addition to any other increases in AAA administrative or arbitration fees, KFC would have to pay $291,600, which is $89,100 more in initial filing fees than had Plaintiffs initially pursued arbitration instead of litigation.  Varnell Aff. ¶ 4.  These initial fees are just that—initial—and do not include the much greater administrative costs and arbitrators' fees that would follow.  Such "economic prejudice" caused by delay in seeking arbitration is itself sufficient to support a finding of waiver. *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26-27 (2d Cir. 1995).

14

### 4.    Plaintiffs' abrupt change of course in seeking arbitration also weighs in favor of finding prejudice.

Finally, the fact that it is Plaintiffs that now bring this motion for arbitration after filing and pursuing vigorously their claims in this Court also weighs heavily in favor of finding prejudice.  More often than not in waiver cases, a defendant belatedly moves to compel arbitration of claims filed against it in court, and the court is understandably hesitant to find waiver simply because the defendant has taken preliminary steps to *defend* itself against a lawsuit.  *See, e.g., Keytrade USA, Inc. v. AIN TEMOUCHENT M/V*, 404 F.3d 891, 897 (5th Cir. 2005).  In contrast, "judicial due process concerns are heightened" when, as in this case, "it is the defendant who, having been hailed into court, is deprived of notice of the plaintiff's interest in arbitration."  *Prudential-Bache Securities, Inc. v. Stevenson*, 706 F. Supp. 533, 535 (S.D. Tex. 1989) (cited with approval in *Stifel*, 924 F.2d at 159, in which the Eighth Circuit also noted, *inter alia*, that "a party's failure to assert a prelitigation demand for arbitration may contribute to a finding of prejudice because the other party has no notice of intent to arbitrate"); *see also Huntington Bank*, 1996 WL 46808, at *3 (prejudice established where "plaintiff chose to handle its dispute by filing a lawsuit instead of initiating the arbitration process" and "then chose to oppose the motions filed against it … rather than immediately seeking a court order referring its dispute to arbitration").  In such cases, where the "aggressor" in the litigation suddenly changes its mind and seeks arbitration, the leading treatise on

15

federal arbitration law has concluded that courts seem to view the prejudice requirement as "considerably weaker" and, in practice, may simply presume that prejudice exists.[11]

*     *     *     *     *

In sum, it cannot be disputed that KFC was prejudiced by Plaintiffs' delay in requesting arbitration. KFC spent almost two years and well over $1,000,000 defending this litigation, ostensibly a nationwide collective action on behalf of 993 AUMs, before Plaintiffs ever mentioned arbitration. Having remained completely silent concerning arbitration as the costs of litigation mounted, Plaintiffs have waived the right to invoke that forum. Moreover, in this Court, Plaintiffs utilized nationwide notice and the FLSA's opt-in procedure to bring together nearly 1000 litigants that they have now deployed strategically across the country, including in 324 individual arbitrations in more than 175 different cities. As a matter of common sense, it would be prejudicial to KFC—not to mention an unjustifiable burden on the court—to allow Plaintiffs to use a purported nationwide collective action to enlist clients before moving to the arbitral forum to pursue their claims. Arbitration might once have been a cheaper, more expeditious alternative to litigation. But almost two years into this lawsuit, that is no longer the case.[12] In light of the

---

[11]     2 Ian R. Macneil et al., FEDERAL ARBITRATION LAW: AGREEMENTS, AWARDS, AND REMEDIES UNDER THE FEDERAL ARBITRATION ACT § 21.3.2.1 & .1A (1999 supp.) (citing, among other examples, *Zwitserse Maatschappij van Levensverzkering en Lijfrente v. ABN Int'l Capital Markets Corp.*, 996 F.2d 1478 (2d Cir. 1993); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925-27 (3d Cir. 1992); *S & H Contractors*, 906 F.2d 1507; *Stevenson*, 706 F. Supp. 533; and *United States ex rel. DMI, Inc. v. Darwin Constr. Co.*, 750 F. Supp. 536, 538-39 (D.D.C. 1990)).

[12]     Ironically, the arbitration agreement on which Plaintiffs now rely begins, "Because of, among other things, the delay and expense which result from the use of court systems, KFC and I agree to use confidential binding arbitration...." Varnell Aff., Ex. A. The

prejudicial trouble and expense to which they have put KFC in litigation, Plaintiffs have waived their right to arbitration.

## II.    KFC Is Entitled To  Declaratory and Injuncive Relief to Preclude Plaintiffs From Pursuing Arbitration.

As a necessary and logical concomitant to their authority under the FAA to compel arbitration when appropriate, federal courts possess the authority to enjoin pending arbitrations when the party pursuing arbitration lacks any legal right to insist upon it.  *See e.g.*, *Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.*, 643 F.2d 863, 868 (1st Cir. 1981) (Breyer, J.) ("to enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present"); *Am. Broad. Cos. v. Am. Fed'n of Television & Radio Artists*, 412 F. Supp. 1077, 1082 (D.N.Y. 1976) ("The concomitant of the power to enforce [an arbitration agreement] is to enjoin arbitration where an agreement therefore is absent.").  The Eighth Circuit has recognized the proper exercise of this authority.  *Nordin v. Nutri/System, Inc.*, 897 F.2d 339, 345-46 (8th Cir. 1990) ("[W]e affirm the district court's [preliminary] injunction [against proceeding with arbitration] because of the high probability of success on the merits, the likely threat of irreparable harm and the public interest in favor of enforcement of arbitration only where the parties have so agreed.").  Courts have also granted declaratory judgments that a party is not obligated to participate

---

agreement thus contemplates that the parties will pursue arbitration in lieu of—*not* in addition to—"the delay and expense" of litigation.

in a pending arbitration.[13] Both remedies are appropriate here because, as discussed above, Plaintiffs' pursuit of their claims in this court over the preceding twenty-one months constitutes a clear waiver of their right to arbitrate.

The record which demonstrating KFC's entitlement to a declaratory judgment and permanent injunction is fully before the Court. In the event the Court concludes, however, that further factual development is required, then KFC requests a preliminary injunction against the pending arbitrations. "A motion for a preliminary injunction requires the district court to consider four factors: (1) the probability of success on the merits, (2) the threat of irreparable harm to the movant, (3) the balance between the harm and the injury that granting the injunction will inflict on other interested parties, and (4) the public interest." *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006). For the reasons discussed in Part I, *supra*, KFC has demonstrated a high probability of success—indeed, that it will prevail—on the merits.

The second factor weighs heavily in favor of this relief because, if the AAA proceeds, the threat of irreparable harm to KFC is substantial. The AAA has already billed KFC for $291,600 in *nonrefundable* filing fees ($900 for each of the 324 cases), with payment due June 29. Varnell Aff. ¶ 4 & Ex. D thereto; *see also* AAA Rules, Costs of Arbitration (including AAA Administrative fees) ("A *nonrefundable* fee in the amount of $900 is payable in full by the employer....") (emphasis added). Based on the AAA's re-

---

[13]   *See, e.g., Wheat, First Secs., Inc. v. Green*, 993 F.2d 814 (11th Cir. 1993) (affirming district court's decision granting a declaratory judgment that broker was not bound by certain arbitration agreements or obligated to participate in pending arbitration proceedings).

cent letter, KFC anticipates that the AAA will suspend the pending arbitrations in light of this motion, but the AAA Rules provide no such assurance. *See id.*, Rule 47 (providing that "the AAA may suspend or terminate ... proceedings" as a result of nonpayment). If the AAA were to proceed, then, in the absence of a preliminary injunction, KFC would either have to (1) pay $291,600 in nonrefundable fees for arbitrations that should never occur or (2) run the risk that the AAA allows the arbitrations to go forward without KFC's participation, clearly another form of irreparable injury. Accordingly, a preliminary injunction would then be necessary to prevent irreparable harm to KFC.

With respect to the third factor, granting a preliminary injunction under those circumstances would not injure Plaintiffs. Since they joined this lawsuit in late 2005 and early 2006, Plaintiffs have shown no interest whatsoever in arbitration, preferring instead to pursue their claims in federal court and ultimately asking this Court to transfer their claims to other federal courts. Plaintiffs cannot possibly now contend that they will be injured if their arbitrations do not go forward immediately.

Finally, the only discernible "public interest" at issue is that parties be required to arbitrate *only when they are in fact legally obligated to do so. Cf. Nordin v. Nutri/System, Inc.*, 897 F.2d at 345-46. Thus, pending a final determination of the parties' rights with respect to arbitration, the only public interest involved in this case favors KFC.

In sum, in addition to granting permanent injunctive and declaratory relief in favor of KFC, the Court should, if necessary, preliminarily enjoin Plaintiffs from proceeding with arbitration because KFC is likely to prevail on the merits of its request and will suffer irreparable harm in the absence of such relief, because it is evident from Plaintiffs'

Case 0:05-cv-02198-PJS-JJG   Document 187   Filed 06/28/2007   Page 21 of 21
Case 1:07-cv-00606-WHP   Document 52   Filed 08/24/2007   Page 54 of 57

own conduct that they will not be injured by an injunction, and because the only discernible public interest weighs in favor of an injunction.

## CONCLUSION

KFC is entitled to an injunction enjoining Plaintiffs from proceeding with the arbitrations they have filed with the AAA and a declaratory judgment that Plaintiffs have waived their right to arbitrate. Given that this Court's prior Order dismissing all opt-in plaintiffs will become effective on August 3 (Dkt. No. 180), to the extent necessary, the Court should stay execution of that order until 30 days following final resolution of the present Motion.

Dated: June 28, 2007

DORSEY & WHITNEY LLP

  /s/ Robert R. Reinhart
By: Robert R. Reinhart #0090566
Gabrielle D. Mead #0341575
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

Robert P. Davis (*admitted pro hac vice*)
Robert C. Varnell (*admitted pro hac vice*)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street N.W.
Washington, D.C. 20006
Telephone: (202) 263-3000

*Attorneys for Defendant KFC Corporation*

# EXHIBIT E

# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

Ray Ackerman et al. on behalf of themselves and others similarly situated,

          Plaintiffs,

vs.

KFC Corporation,

          Defendant.

Case No.: 0:07-cv-02656-PJS-JJG

**DEFENDANT'S NOTICE OF MOTION FOR AN ORDER DENYING CERTIFICATION OF A CLASS OR COLLECTIVE ACTION AND DISMISSING PLAINTIFFS**

TO:   Plaintiff Christian Parler, through his attorneys, Donald H. Nichols, Paul J. Lukas, and Michele R. Fisher, Nichols, Kaster & Anderson, PLLP, 4600 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402

PLEASE TAKE NOTICE that on September 6, 2007, at 9 a.m., at 180 E. Fifth Street, 7th Floor, in Courtroom 3, before The Honorable Patrick J. Schiltz, Defendant KFC Corporation will move the Court for an Order granting its Motion For An Order Denying Certification of a Class or Collective Action and Dismissing Plaintiffs.

Dated:  July 20, 2007

DORSEY & WHITNEY LLP


By:    s/ Robert R. Reinhart
Robert R. Reinhart, #0090566
Gabrielle D. Mead, #341575
50 South Sixth Street, Ste. 1500
Minneapolis, MN 55402
Of Counsel:                                    Telephone: (612) 340-2600
Robert P. Davis
Diana L. Hoover
MAYER, BROWN, ROWE & MAW LLP        Attorneys for Defendant KFC Corporation
1909 K Street N.W.
Washington, D.C.  20006
Telephone:  (202) 263-3000